**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| MASTER WOODCRAFT CABINETRY, LLC and MCW INDUSTRIES, LLC, | § § § | |
| | § | |
| *Plaintiffs*, | § § | |
| v. | § | Case No. 2:21-cv-00143-JRG-RSP |
| | § | |
| CHOATE CONSTRUCTION COMPANY, | § § § | |
| *Defendant*. | § § | |

**<u>MEMORANDUM OPINION</u>**

On July 22, 2021, the Court heard oral argument on two motions:

- First Amended Motion to Remand and to Stay Parties Arbitration Conduct ("Motion to Remand"), filed by Plaintiffs Master Woodcraft Cabinetry, LLC and MCW Industries, LLC ("Plaintiffs"). Dkt. No. 9[1]. Plaintiffs move the Court to remand this case to the district court of Harrison County, Texas as well as to stay an ongoing arbitration between the parties. *Id.* at 1[2]. The Motion to Remand is **DENIED**.

- Motion for Stay of Proceedings and Referral to Arbitration ("Motion to Stay"), filed by Defendant Choate Construction Company ("Defendant"). Dkt. No. 8. Defendant moves the Court to stay the federal court proceedings and refer the case to arbitration. *Id.* at 5. The Motion to Stay is **GRANTED**.

I. **BACKGROUND**

A. **Factual History**

---

[1] Plaintiffs' original motion to remand (Dkt. No. 7) appears to be replaced by the Motion to Remand (Dkt. No. 9).
[2] Citations are to document numbers and page numbers assigned through ECF.

The parties in this case are the Plaintiffs Master Woodcraft Cabinetry, LLC and MCW Industries both of which are domiciled in Texas, and the Defendant which is domiciled in Georgia. Dkt. No. 1 at 1.

This lawsuit arises from a contractual dispute between the parties related to the construction of an apartment complex known as Liberty Southpark CCRC, in Charlotte, North Carolina ("Liberty Project"). Dkt. No. 11 at 1. The parties had a pre-existing business relationship prior to the Liberty Project. In December 2014, the parties entered into credit agreement related to a different project in South Carolina. Dkt. No. 9-3; *see also* Dkt. No. 11 at 3. The Credit Agreement contains a clause that states:

> The undersigned certifies that the above furnished information is true and correct and agrees ***that this document shall become a part of the terms of all sales contracts or purchase orders between MWCCIMCW Ind. and Purchaser. The relationship between Seller and Purchaser and all suits between MWCC/MCW Ind. and Purchaser arising under any theory of law or any cause of action shall be governed under the laws of the State of Texas without regard to any conflict of laws provision.*** . . . Purchaser agrees that Jurisdiction and venue for any suit arising out of any relationship between Purchaser and MWCC/MCW Ind. under any theory of law or any cause of action shall be only in the appropriate County or State Court in Harrison County, Texas and Purchaser expressly agrees and consents to jurisdiction and venue in said State and County. In further consideration of the extension of credit by Seller to Purchaser, the Purchaser expressly agrees that no removal to any United States District Court or transfer of venue (Federal or State) shall ever by sought by Purchaser and Purchaser hereby waives any objection to in personam jurisdiction and venue and agrees to make no request to transfer to any suit to any other Court other than the appropriate County or State Court in Harrison County. Texas.

*Id*. at 1 (emphasis added).

In October 2019, the parties entered into a contractor-subcontractor agreement ("Subcontractor Agreement")[3] relating to the Liberty Project. Dkt. No. 8-1. Under the Subcontractor Agreement, the Plaintiff was to build and install cabinets, among other things, for

---

[3] The Defendant where considered to be the contractor. Plaintiffs were considered to be the subcontractor.

the Liberty Project. Dkt. No. 11 at 1. The Subcontractor Agreement contains provisions relating

to arbitration, merger, and governing law. Dkt. No. 8-1 at 23–28. Of particular note are the

arbitration and merger clauses, which state:

Article X

Claims and Disputes

All claims, disputes, and controversies between Contractor and Subcontractor, relating in any way to the Subcontract, the Work or the Project shall be conclusively resolved as follows:

> **Disputes Arising from Contractor's Decisions** - Subcontractor shall be bound by all decisions of Contractor, which shall be final unless the parties have agreed in writing that further resolution is needed, or Subcontractor timely commences arbitration proceedings in strict accordance with the following provisions:
>
> > a)    If Subcontractor disputes any decision of Contractor, the dispute shall be resolved by final and binding arbitration administered by the American Arbitration Association ("AAA") . . . .

Article XII

Merger

The Subcontract supersedes any and all proposals, negotiations and agreements, both written and oral, prior to the date of the Subcontract, and shall be amended only by written instrument signed by both Contractor and Subcontractor. No term or provision of the Subcontract may be waived by either party except in writing, signed by Contractor's duly authorized officer or agent. . . . Any additional communications between the parties regarding the terms of the Subcontract shall not be considered either a revocation of the offer or acceptance by either party, but shall be considered communications regarding a potential change to the Subcontract pursuant to the provisions herein.

*Id*. at 23–27.

During the course of the Liberty Project the parties entered into a number of amendments

to the Subcontractor Agreement, known by the parties as "change orders." *See generally* Dkt. No.

9-5. These change orders supplement or in some cases alter the terms of the Subcontractor

Agreement (e.g. final amount to be paid). *Id*. at 1. On March 26, 2020, Plaintiffs sent a document

to Defendant entitled "Change Order Number 005" ("Plaintiffs' Form").  The document is signed

by the Plaintiffs but unsigned by the Defendant. *Id*. at 2. Plaintiffs' Form is Plaintiffs' change order

3

form that appears to detail an amendment to the contract price. *Id*. Since Change Order Number 005 was created by the Plaintiffs it also contains a number of boilerplate provisions related to controlling law. *Id*. at 3. On April 21, 2020 (after Change Order Number 005 was sent to the Defendant), both Plaintiffs and Defendant signed "Subcontractor Change Order #4" ("Defendant's Form"). *Id*. at 1. Subcontractor Change Order #4 is on Defendant's form and recites:

> The work covered by this Change Order shall be performed under the same terms and conditions of the Subcontract. Any changes and/or revisions to this document must be initialed by both parties to be valid and binding.

*Id*. At some point complications arose relating to the work to be performed under the Subcontractor Agreement, ultimately resulting in the present suit. Dkt. No. 11 at 1–2.

### B.    Procedural History

On March 18, 2021, the Plaintiffs filed a complaint against the Defendant in the District Court, Harrison County, Texas styled: *Master Woodcraft Cabinetry, LLC and MCW Industries, LLC vs. Choate Construction Company – Cause No. 21-0260*. Dkt. No. 1 at 1. In the originally filed complaint, Plaintiffs allege "[v]enue in Harrison County is proper in this cause because the parties have agreed in writing that venue is proper here and only here, or, in the alternative, all or a substantial part of the events giving rise to the claim occurred in Harrison County." Dkt. No. 3 at 2.

On April 23, 2021, Defendant removed the case from the state district court to the U.S. District Court for the Eastern District of Texas, Marshall Division. Dkt. No. 1. In its notice of removal, the Defendant alleges that this Court has diversity jurisdiction over this dispute. *Id*. ¶ 2. On May 20, 2021 pursuant to the Subcontractor Agreement, the Defendant filed a demand for arbitration. Dkt. No. 8 at 2. The demand for arbitration was accepted by the American Arbitration Association ("AAA") and assigned an arbitration proceeding number. *Id*.

4

## II.     DISCUSSION

Plaintiffs take the position that remand back to the state district court is proper because the Credit Agreement controls the Court's jurisdiction analysis—or in the alternative Plaintiffs' Form controls the analysis. Dkt. No. 9 at 2 ("Plaintiffs' claims arise from a Credit Agreement and Change Order signed by Defendant which included a forum selection clause requiring all suits to be brought in a Texas state court."). Defendant, on the other hand, contends that the Subcontractor Agreement governs the dispute between the parties. Dkt. No. 11 at 3.

### A.     The Credit Agreement was Superseded by the Subcontractor Agreement

The merger clause in the Subcontractor Agreement supersedes the provisions of the Credit Agreement. "A merger occurs when the same parties to an earlier agreement later enter into a written integrated agreement covering the same subject matter." *Superior Laminate & Supply v. Formica Corp.*, 93 S.W.3d 445, 448-449 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing *Fish v. Tandy Corp.*, 948 S.W.2d 886, 896 (Tex. App.—Fort Worth 1997, writ denied). Whether merger occurs is determined by the parties' intent. *Id*. According to Texas law the Court determines the intent of the parties by interpreting the contract language "in its plain grammatical meaning . . . ." *Coffman v. Provost Umphrey*, LLP, 161 F. Supp.2d 720, 724 (E.D. Tex. 2001) (citing *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518-19, 23 Tex. Sup. Ct. J. 280 (Tex. 1980)). The plain meaning of the Subcontractor Agreement will be enforced, unless the plain meaning defeats the intent of the parties. *See Ikon Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 694 (Tex. App.--Houston [14th Dist.] 1999, no pet.) (citing *D. Wilson Constr. Co. v. Cris Equip. Co., Inc.*, 988 S.W.2d 388 (Tex. App.--Corpus Christi 1999)).

The Court sees no reason to deviate from the plain meaning of the Subcontractor Agreement's merger clause. The Court finds there that there is no suggestion that at the time of

signing the parties meant to deviate from the plain meaning of the Subcontractor Agreement's merger clause. Although the Credit Agreement has a provision that seeks to merge the provisions of the Credit Agreement with any subsequent agreement, that is clearly contrary to a plain reading of the later-signed Subcontractor Agreement's merger clause. The Subcontractor Agreement merger provision shows a clear intent of the parties to "supersede[] any and all proposals, negotiations and agreements, both written and oral, prior to the date of the Subcontract." Dkt. No. 8-1 at 27. Accordingly, the Subcontractor Agreement's merger clause superseded the previous Credit Agreement, at least for the Liberty Project.

### B.      Subcontract Change Order #5 is not Applicable

Plaintiff's Form did not alter the Subcontractor Agreement. Plaintiffs contend that it received the Defendant's Form and the Plaintiff's Form at the same time (or received Plaintiffs' Form very closely in time after the Defendant's Form was received) and that because they were received at approximately the same time, both documents should be treated as a single document. Dkt. No. 9 at 5–6. Defendant counters that it was only Defendant's Form that was signed and executed by both parties and that the Defendants had no intent to agree to Plaintiffs' Form. Dkt. No. 11 at 5–6 ("The *four-page* document Plaintiffs attach as Exhibit B to their Motion is *not* "Change Order #4" executed by Plaintiff and Defendant. Rather, Change Order #4 was *only* comprised of the *first page* of those documents, and which bears the signatures of both parties' representatives.").

The central dispute is whether the change order consists only of Defendant's Form or whether it additionally comprises the unsigned Plaintiffs' Form.[4] The change order consists only

---

[4] The record is unclear whether Plaintiffs' Form was sent in the same transmission as Defendants' Form or whether Plaintiffs' Form was sent shortly after Defendant's Form was received. That distinction does not play a role in the Court's analysis in this case because in either case the result is the same.

of Defendant's Form. Defendant intended to preserve the governing Subcontractor Agreement provisions as Defendant expressly state in Defendant's Form. Dkt. No. 9-5 at 1 ("All other conditions and stipulations of the Original Subcontract are to remain the same." (emphasis removed)). Defendant's intent is further confirmed by Defendants' Form expressly stating it is only a one-page document. *Id.* ("Change Order Page 1 of 1"). The Court concludes that the Plaintiffs' Form was a "Change Order Proposal" sent to the Defendant for review and Defendant's Form is the final reduction of the proposed amendment contemplated, and actually signed, by both parties. Dkt. No. 8-1 at 8.

Under Texas law "an unsigned paper may be incorporated by reference into a paper signed . . . The language used is not important provided the document signed by the [parties] . . . plainly refers to another writing." *Trico Marine v. Stewart & Stevenson Technical Services, Inc.*, 73 S.W.3d 545, 549 (Tex. App.--Houston [1st Dist.] 2002) (quoting *Owen v. Hendricks*, 433 S.W.2d 164, 166, 12 Tex. Sup. Ct. J. 28 (Tex. 1968)). "The absence of such a reference within the signed document shows that the parties did not intend to contract with reference to the other instrument." *Id.* (internal quotation omitted) (quoting *Clutts v. S. Methodist Univ.*, 626 S.W.2d 334, 336 (Tex. App.--Tyler 1981)). There is no reference to an intent to incorporate the Plaintiffs' Form. There is no indication that the parties wanted to incorporate the unsigned Plaintiff's Form into Defendant's Form. Thus, it cannot be said that Plaintiff's Form was incorporated into Defendant's Form.

Other than the previously presented arguments, Plaintiffs do not articulate any other argument why remanding this action to the Harrison County district court would be proper. Based on the amounts in dispute and complete diversity between Plaintiffs and the Defendant, the Court has jurisdiction over this case. 28 U.S.C. § 1332(a)(1).

### C.       Federal Court Proceedings are Stayed and Referred to Arbitration

Based on the Subcontractor Agreement, Defendant moves the Court to stay the federal court proceedings and direct the parties to arbitrate this dispute. *See* Dkt. No. 8 at 1. Plaintiff does not advance any arguments that Defendant's arbitration clause is invalid, or otherwise inapplicable. Plaintiff's only objection to enforcement of the arbitration clause relates to whether the jurisdiction is controlled by the either the Credit Agreement or Plaintiffs' Form. *See generally* Dkt. No. 10.

If the court is "satisfied" that an action is subject to an enforceable arbitration provision, the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The FAA "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S. Ct. 1238, 1241 (1985).

The arbitration provision under the Subcontractor Agreement expressly states that "all claims, disputes, and controversies between Contractor and Subcontractor . . . shall be resolved by final and binding arbitration." Dkt. No. 8-1 at 23. The provision outlines the details concerning arbitration, including the powers of the arbitrator, the location where arbitration is to be held, and the effect of a decision. *Id*. at 24. Moreover, Plaintiffs did not argue that the arbitration clause is unenforceable or that the dispute was outside of the arbitration clause's scope; thus, Plaintiffs have not advanced any argument why the arbitration would be inappropriate. The Court is satisfied that the arbitration provision is valid and that this dispute falls within the scope of the arbitration provision.

### III.    CONCLUSION

The Motion to Remand is **DENIED**. The Court **STAYS** the proceedings until the resolution of arbitration. It is **ORDERED** that the parties advise the Court within 14 days of the completion of the arbitration or other disposition of the dispute.

**SIGNED this 2nd day of August, 2021.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE